UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-58

**MARGIE SHELBY**                                                                                                **PLAINTIFF**

**v.**

**THE LUBRIZOL CORPORATION**
**WAGE EMPLOYEES' PENSION PLAN**                                                           **DEFENDANT**

### MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's Brief (Docket #22). Defendant has responded (Docket #23). The Court has reviewed the administrative record (Docket #21). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion for judgment on the administrative record is GRANTED, and Defendant's cross motion is DENIED.

### BACKGROUND

Plaintiff Margie Shelby worked for The Lubrizol Corporation ("Lubrizol") as a process specialist in Calvert City, Kentucky. Lubrizol provides its full-time employees with sick and disability leave. Under the "Sick Leave and Salary Continuation Policy," employees who are ill or injured receive up to six months sick leave and salary. Lubrizol also provides its employees with a group insurance policy, The Lubrizol Corporation Long Term Disability Plan ("the Plan"). The Plan is a defined benefit pension plan, governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Once an employee's sick leave has expired, an employee may apply to receive long term disability benefits equal to at least 60% of basic earnings. The Plan must first find that the employee is "Totally Disabled" and unable to return to work due to the same injury or illness. An employee is considered totally disabled under the Plan if:

> he is unable to perform the essential functions of his job or any Reasonable Employer Occupation for more than 1,040 work hours . . . due to injuries or illnesses, is under the care of a legally qualified physician for such injuries or illnesses, and such injuries or illnesses occurred while the Employee was Actively at Work or while receiving salary continuation pay . . . .

The Lubrizol Corporation Long Term Disability Plan, § 1.2(n).  An employee is entitled to a full review of any denial of long term disability benefits. § 6.3(c).

On or about May 1, 2007, Shelby became disabled and could no longer perform her job duties.  She was diagnosed with "cervical/lumbar ruptured disc/spinal stenosis."  Administrative Record, 49 [hereinafter "A.R."].  Shelby underwent spinal surgery on July 9, 2007, performed by neurosurgeon Dr. Rex Arendall.  A.R. 60.  Dr. Arendall originally predicted that Shelby would be unable to work for six to eight weeks following her operation.  A.R. 49.  Shelby underwent a second surgery on July 13, 2007, to debride the wound and remove excess fluid from the first surgery.  A.R. 62.  Shelby's doctor approved her return to work on October 1, 2007, provided she wore a brace and did not do any lifting over twenty-five pounds.  A.R. 23-25.  On October 23, 2007, Dr. Arendall noted that Shelby should be off work until November 16, 2007.  A.R. 29.  Dr. Arendall approved Shelby's return to work on November 19, 2007, so long as she did not lift anything over five pounds, she did not sit or stand for a prolonged period of time, and she worked only half days.  A.R. 39.

Shelby applied for long term disability benefits on November 1, 2007.  A.R. 31.  She was eligible to begin receiving these benefits starting November 16, 2007.  A.R. 30.  Dr. Patrick Bray reviewed Shelby's records and found that Shelby was not totally disabled within the meaning of the Plan.  A.R. 37-38.  Shelby appealed the denial of her long term disability benefits.  A.R. 65-66.  Her appeal was referred to the Medical Review Institute of America, Inc. ("MRIoA"), where

an independent physician, board certified in Neurological Surgery, with a sub-specialty in Complex Spine Surgery, reviewed Shelby's file.  A.R. 68-70.  On November 27, 2007, MRIoA sent a letter to Suzanne Suva, the Disability Administrator for the Plan, stating that "there is no objective neurological reason that the patient cannot do sedentary 8 hour work."  A.R. 69.

Shelby and Lubrizol contemplated Shelby's return to work in mid-November 2007.  Suzanne Suva sent an email to Donna Hamlin, Shelby's rehabilitation case manager, stating "If Arendall gives her 4 hours next week (it's a 3 day week) we can live with that."  A.R. 100.  Shelby notified Suva that she could only work four hour days pursuant to her doctor's restrictions.  On November 19, 2007, Shelby had a phone conversation with the Calvert City human resources coordinator, Mandy Miller, and the plant manager, Rick Brinly.  They discussed Shelby's return to work.  On November 27, 2007, Miller sent Suva the following email:

> We were prepared to and offered Midge [Shelby] to again return to her job in a totally sedentary manner for an appropriate amount of time to assist in her recovery.  Her duties would have been administrative in nature and allowed freedom to sit, stand, and walk as necessary.  She was told that she did not have to go into the plan and cover for the shift supervisor.  In my discussion with Midge she said she could only work 4 hours a day and would not be returning to see her physician until March, 08.  We could not agree to 4 hours per day for an undetermined length of time.  This was explained to Midge in detail by me with Rick Brinly present during a phone conversation on 11/19/07.

A.R. 67.  The Plan affirmed the denial of Shelby's long term disability benefits on November 30, 2007.  A.R. 101.  Shelby resigned on December 3, 2007.

## STANDARD

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually

considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). This administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a

single piece of evidence– no matter how obscure or untrustworthy– to support a denial of a claim for ERISA benefits." *Id.*

## DISCUSSION

The parties agree that "arbitrary and capricious" is the appropriate standard of review. Plaintiff believes that Defendant's denial of benefits was arbitrary and capricious because (1) the Plan is both administered and paid out by Defendant; (2) the Plan's reviewing physician conducted a file review only; (3) the Plan implicitly made credibility determinations based upon Plaintiff's subjective complaints without a physical examination; and (4) a human resources representative in Calvert City, Kentucky, was allowed to reject the Plan's decision to allow Plaintiff to return to work under her doctor's work restrictions.

**I.     Conflict of Interest**

The Court must consider potential conflicts of interest, including situations where the plan administrator is also the payer of plan benefits. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007).  A conflict of interest is just one factor considered in the Court's determination; it does not change the standard of review. *Glenn,* 128 S. Ct. at 2351.  The Supreme Court recently ruled in *Glenn* that a conflict of interest is of greater importance where there is "a history of biased claims administration . . . ." *Id.*  A conflict should not be a substantial factor, however, if the insurer has taken steps to reduce bias, such as "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking . . . ." *Id.*  The First Circuit has interpreted these statements to mean that "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process

5

against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009).  Nothing in the record demonstrates a history of biased decisionmaking.  In addition, there is evidence that Defendant utilizes neutral third parties in its claims process, although the Plan is already required on appeal to consult with a neutral health care professional with appropriate training.  29 C.F.R. § 2560.530-1(h)(3)(iii), (3)(v), & (4).  Therefore, the Court finds that no greater or lesser weight is given to the inherent conflict of interest in the Court's arbitrary and capricious analysis.

## II.     File Review

Plaintiff's file was reviewed by two physicians, Dr. Patrick Bray and a MRIoA physician board certified in Neurological Surgery (MRIoA has a policy of keeping the names of its reviewing physicians confidential).  Dr. Bray's analysis is as follows:

> I reviewed all the records that were presented to me which included all the records and test results from her treating physician, Dr. Rex Arrendall [sic].  Ms. Shelby underwent a decompressive laminectomy on July 9, 2007 followed by a posterolateral arthrodesis.  The Presley Reed medical guidelines state a return to sedentary work from this type of surgery is 21 - 35 days after surgery.  If there are complications the guidelines say that a return to work could be expected within 91 days.  In Ms. Shelby's case there were no complications.  In fact, her doctor's records indicate that she was doing well after the surgery and that she had much less pain than she did prior to the surgery.  Ms. Shelby had been off from work 130 days after surgery when she applied for long term disability.  As her job was totally sedentary in nature and she was free to sit, walk and stand at her leisure, there was no reason that she could not have returned to work full time.
>
> Based on all the information that I reviewed, the data does not give any evidence that Ms. Shelby could not meet the requirements of her sedentary position when she applied for long term disability.

A.R. 37.  Dr. Bray relied on the paper file.  He did not do a physical examination of Plaintiff. Based on Dr. Bray's report, Defendant denied Plaintiff's request for long term disability benefits. Plaintiff appealed.  The MRIoA physician found that "[t]here is no objective neurological reason

that the patient cannot do sedentary work." A.R. 69. This physician also based his or her report on the paper record; no physical examination took place.

First, the Court notes that conducting a file review only is not necessarily arbitrary and capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) ("[W]e find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination."). It is, however, a factor to be considered in the Court's determination. *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). "[T]he failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. Defendant's right to conduct a physical examination is explicitly provided for in the Plan. A physical examination of Plaintiff was never requested. Therefore, the Court considers this factor in its analysis.

"Nothing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). "As long as a plan administrator offers a reasonable explanation based upon the evidence for its decision, it may choose to rely upon the medical opinion of one doctor over that of another doctor." *Roumeliote v. Long Term Disability Plan for Employees of Worthington Industries*, 475 F. Supp. 2d 742, 746 (S.D. Ohio 2007), *aff'd* 292 Fed. Appx. 472 (6th Cir. 2008). In this case, the Plan relied on the opinions of its reviewing physicians rather than Dr. Arendall's recommendations. The reviewing physicians based their opinions on Dr. Arendall's notes and published guidelines from the medical field. In the first

denial letter to Plaintiff referring to the Plan's decision, the Plan stated:

> The Disability Committee recently reviewed your application for long term disability benefits (LTD) and has determined that based on the fact that you have a sedentary job and you are still able to work in that position, you are not totally disabled from your occupation as a Process Specialist under Section 1.2(n) of the LTD Plan.

A.R. 38. The second denial letter merely states "All of the documents were reviewed by an independent Neurological Surgeon and an Occupational Medicine physician. Both wrote in their reports that there was no objective neurological reason why you cannot work an 8 hour sedentary job." A.R. 101.

Because the Plan relied on the reviewing physician's reports, the Court looks to the reasonableness of those opinions. The Court finds one glaring omission. Although the Court's copy of the Administrative Record contains a document regarding Plaintiff's follow up visit with Dr. Arendall on October 23, 2007, A.R. 64, it appears that the MRIoA physician never received this document. A.R. 68. Neither of the reviewing physicians mentions this document, which states that Plaintiff "now is having worsening pain in back and all over." A.R. 64. However, both physicians comment on the August 3, 2007, follow up visit in which Dr. Arendall noted that Plaintiff had less leg and back pain. A.R. 51. The October 23, 2007, follow up visit occurred just one week prior to Plaintiff's application for long term disability. The MRIoA physician acknowledges that he received documents dated October 24, 2007, and November 13, 2007, but not the October 23, 2007, document. A.R. 68. Dr. Bray does not state which records he received, but his decision was not issued until November 10, 2007. As the October 23, 2007, document is in the Administrative Record, which was presented to the Court by Defendant, the Court can see no reason why this document was not submitted to the reviewing physicians, nor

8

why it was not considered in making their determinations. "A plan administrator . . . cannot arbitrarily disregard the medical evidence proffered by the claimant, including the opinions of a treating physician." *Roumeliote*, 475 F. Supp. 2d at 747 (citing *Black & Decker*, 538 U.S. at 834; *Calvert*, 409 F.3d at 294). The plan administrator must provide reviewing physicians "with all letters from a claimant's physician, which the file reviewer must consider." *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 393 (6th Cir. 2009). In addition, even if this document was unavailable during the initial review, on appeal the plan administrator must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant . . . without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(iv). Accordingly, the Court finds that this factor weighs heavily toward a finding of arbitrary and capriciousness.

**III.    Credibility Determinations**

Plaintiff's third argument, that the Plan review made credibility determinations in the absence of a physical examination, is unpersuasive. In cases that have found credibility determinations to speak towards arbitrary and capricious action, the reports have contained statements describing the plaintiff as "exaggerating" and "embellishing," or making "subjective exaggerations." *See, e.g.*, *Bennet v. Kemper Nat. Services, Inc.*, 514 F.3d 547, 555 (6th Cir. 2008); *Calvert*, 409 F.3d at 296-97. In this case, both doctors' reports lack any such language. Any references to Plaintiff's credibility were made based on information contained in Dr. Arendall's notes. ("[H]er doctor's records indicate that she was doing well after the surgery and that she had much less pain than she did prior to the surgery." A.R. 37).

**IV.    Input of Local Employee**

Finally, Plaintiff argues that a local human resources coordinator, Mandy Miller, was allowed to be part of the decision as to whether Plaintiff returned to work or received long term disability benefits on appeal. Mandy Miller emailed Suzanne Suva on November 27, 2007. She informed Suva that Plaintiff and her employer could not agree to Plaintiff working four hours per day for an undetermined length of time, despite Dr. Arendall's restrictions. A.R. 67. Suzanne Suva had previously communicated "If Arendall gives her 4 hours next week (it's a 3 day week) we can live with that." A.R. 100. On November 30, 2007, Suzanne Suva informed Plaintiff her appeal for disability benefits was denied, and she had until December 3, 2007, to return to work or be terminated. A.R. 101. The reviewing physician who handled Plaintiff's appeal also submitted his or her opinion on November 27, 2007. A.R. 68. There is no evidence that Mandy Miller's input played any role in the denial of Plaintiff's long term benefits. The denial letter sent to Plaintiff only references the reports of the two reviewing physicians. Therefore, this claim does not speak to the denial of Plaintiff's benefits or the arbitrary and capricious standard.

The Court finds that Defendant's denial of Plaintiff's disability benefits was arbitrary and capricious. The October 23, 2007, follow up visit report was likely never given to the reviewing physicians. In addition, there was no physical examination despite the fact that the Plan allows for physical exams. An inherent conflict of interest exists because Defendant both reviews claims and pays benefits. The Court believes that, as a whole, these factors support a finding that Defendant failed to engage in a "deliberate principled reasoning process . . . supported by substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted). However, the Court does not believe the record clearly establishes that Plaintiff is entitled to long term disability benefits. Therefore, this case is remanded to

Defendant to conduct a full and fair review. *See, e.g.*, *Elliott v. Metro. Life Ins. Co. of N. Am.*, 473 F.3d 613, 622 (6th Cir. 2006) (remand to MetLife appropriate where the Court did not find that the plaintiff was "clearly entitled to benefits")).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED**, and Defendant's Motion is **DENIED**. This case is remanded to the plan administrator for a full and fair review. Both parties may submit any additional relevant evidence.

An appropriate order shall issue.